IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ARTAVIOUS HAYNES,

    Plaintiff,

    v.

CLAYTON COUNTY, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:25-CV-2218-TWT

OPINION AND ORDER

    This is a civil rights action. It is before the Court on Defendant Clayton County's Motion to Dismiss [Doc. 12]. For the reasons set forth below, Defendant Clayton County's Motion to Dismiss is GRANTED.

### I.  Background[1]

    This case arises from the fatal shooting of Plaintiff Artavious Haynes's dog by Clayton County Officer Jabin Lee Bethea. In May 2024, a Clayton County police officer conducted a traffic stop involving a car with tinted windows. (Compl. ¶¶ 11–13 [Doc. 1].) The car "drove off" before the officer completed the traffic stop. (*Id.* ¶ 15.) Within a couple hours, Clayton County officers determined that the car was located at a residence in Forest Park, Georgia. (*Id.* ¶¶ 9, 16.) Upon arriving at the residence, the officers encountered and detained three individuals who were found leaving the property. (*Id.*

---

[1] The Court accepts the facts as alleged in the Complaint as true for purposes of the present Motion to Dismiss. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

¶¶ 17–18.) The officers located the car in question in the residence's carport. (*Id.* ¶ 25.) At some point, Officer Bethea entered the backyard through a door in the carport. (*Id.* ¶ 31.) Two leashed dogs were located in the backyard. (*Id.* ¶ 35.) The leash was tethered to a stake in the ground and was allegedly too short to allow the dogs to reach either the car or backyard patio onto which Officer Bethea entered. (*Id.* ¶¶ 36–40, 34.) Officer Bethea shot one of the dogs twice, though the dog was rendered immobile after the first shot. (*Id.* ¶ 42.) The dog ultimately died of its injuries. (*Id.* ¶ 62.) No others were injured. (*Id.* ¶ 43.)

Plaintiff Haynes filed suit against Officer Bethea and Clayton County. The Complaint alleges the following claims: (1) a Fourth Amendment violation for unlawful seizure against both Defendants, (2) negligent training and supervision against Clayton County, (3) trespass to chattel against both Defendants, and (4) conversion against both Defendants. He seeks compensatory damages, punitive damages, and attorney's fees.

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts and even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp.*, 711 F.2d 989, 994–95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that, at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III.   Discussion

#### A. Section 1983 Claims (Count I)

A local government body may be held liable under § 1983 if the execution of its policy or custom is the "moving force" that violates the constitutional rights of an individual.[2] *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To state a § 1983 claim against a county, a plaintiff must plausibly

---

[2] As to Clayton County's § 1983 liability, the Complaint appears to allege liability against the County on the theory of *respondeat superior*. (Compl. ¶ 99.) However, a county can only incur § 1983 liability under the standard set out in *Monell*. *McDowell*, 392 F.3d at 1289. Any claim as to the County's vicarious liability is therefore dismissed. The Court reads the remainder of the Complaint as alleging *Monell* liability against the County.

allege that (1) "his constitutional rights were violated," (2) the county maintained a policy or custom that "constituted deliberate indifference to that constitutional right," and (3) "the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). As can be seen below, the Court's inquiry begins and ends with the policy or custom prong.

While Haynes does not claim that Clayton County maintained an official "policy" of using lethal force against dogs, he claims that the County had a "custom" of "failing to train its police officers" on the use of lethal force against civilian dogs. (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Dismiss, at 6 [Doc. 16].) To support this claim, Haynes cites a statistic that Clayton County officers have shot dogs on at least ten occasions since 2010, (Compl. ¶ 75), and he points to three specific instances in which Clayton County officers shot civilian dogs rather than using other means to restrain or capture them, (*id.* ¶¶ 76–78). Haynes describes those three instances as follows: (1) in 2010, a Clayton County officer on patrol encountered a dog that was "restrained by an electronic fence" and shot the dog when it "jumped off a porch, barked, and ran toward" the officer, (*Id.* ¶ 76); (2) in 2015, Clayton County officers "encountered" a dog while performing a welfare check at a residence and "shot the dog twice, even after the first shot immobilized the dog," (*Id.* ¶ 77); and (3) in 2024, a Clayton County deputy in the process of serving an eviction notice shot a dog that "rushed outside" when the officer opened the door to the residence, (*Id.* ¶ 78.). Beyond these incidents, Haynes explains that the

4

County's failure to train its officers on the use of force with respect to dogs is "obvious" deliberate indifference on its own. (*See* Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Dismiss, at 11–12.)

Ultimately, Haynes has failed to plausibly allege that Clayton County maintained a custom of failing to train its officers on the appropriate use of force in their encounters with dogs. A "custom" for § 1983 purposes is "such a longstanding and widespread practice that it is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Craig v. Floyd County*, 643 F.3d 1306, 1310 (11th Cir. 2011) (citation modified) (quoting *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)); *see also Brown*, 923 F.2d at 1481 (requiring a plaintiff to show a "widespread practice that . . . is so permanent and well settled as to constitute a custom or usage with the force of law." (citation modified)). To establish a custom of deliberate indifference, plaintiffs most often allege a "pattern of constitutional violations [ ] such that the municipality knows or should know that corrective measures are needed." *Young v. City of Augusta*, 59 F.3d 1160, 1172 (11th Cir. 1995). But, sometimes, plaintiffs need not point to prior incidents if they are able to show that the failure to provide a "particular type of training" is "obvious[ly]" deliberate indifference on its own, such as in cases where officials will "face clear constitutional duties in recurrent situations." *Id.* Haynes's allegations fall far short of either standard.

First, the incidents that Haynes describes do not sufficiently support an inference that Clayton County maintains a custom of failing to train officers on the use of lethal force against dogs. As an initial matter, Haynes's allegation that Clayton County officers have shot at least ten dogs since 2010 is too vague to support further inference. Although Haynes attempts to describe three of these incidents, he does not divulge any underlying facts about the remaining incidents, making it difficult to infer that the shootings must not have been justified. Regarding the three incidents that Haynes does describe, they are similarly unhelpful. In two of the incidents described, the dogs apparently "ran" or "rushed" toward the officer. (Compl. ¶¶ 76, 78.) The Court makes no determination on whether the use of lethal force was appropriate in those cases, but they do not clearly support the inference that Clayton County has a custom of allowing its officers to shoot dogs "without any legal justification," as Haynes contends. (*See* Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Dismiss, at 7.) While the third incident—in which an officer performing a welfare check "encountered" and shot a dog, (Compl. ¶ 77)—is factually similar to the present case, the description of the incident is so devoid of any details regarding its circumstances that it is impossible to infer from the shooting alone that the County has a custom of condoning lethal force against dogs.[3] At bottom, it

---

[3] This is not to say that future plaintiffs must provide significant detail about each prior incident identified. But plaintiffs must provide enough detail to allow a plausible inference that those prior incidents may have resulted from an improper policy or custom. Haynes has not done so here.

appears that Haynes asks the Court to conclude from the mere existence of several dog shootings that Clayton County must have failed to properly train its officers. Without more, the Court declines to do so.

Second, even if these three incidents sufficiently mapped onto the present facts and were described in greater detail, they would likely be too few and far between to demonstrate a county-wide custom. Regarding these specific facts, three incidents over a fifteen-year period cannot be said to constitute "a longstanding and widespread practice" authorized by the County. See Craig, 643 F.3d at 1310; see also Hawk v. Klaetsch, 522 F. App'x 733, 735 (11th Cir. 2013) ("We fail to see how three incidents over the span of nearly five years can constitute frequent, widespread, or rampant abuse."). And, in fact, only two of the three incidents occurred before the present incident, pulling the number of incidents further down. (See Br. in Supp. of Def.'s Mot. to Dismiss, at 8 [Doc. 12-1].) Given that it is likely Clayton County officers regularly encounter individuals and their dogs in the course of their employment, these incidents are better characterized as a set of isolated incidents. "Isolated incidents" are "insufficient to establish a custom or policy." See Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986) (citation omitted).

Third, the County's alleged failure to train its officers on the use of force against dogs does not "obvious[ly]" constitute a custom of deliberate indifference such that Haynes need not identify any prior incidents. In Young,

7

the Eleventh Circuit noted that a local government's failure to train police officers on "the constitutional limitations on the use of deadly force" would obviously constitute deliberate indifference, given that officers carry firearms and interact with individuals. *Young*, 59 F.3d at 1172 (citing *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)). Haynes relies on this example to argue that "there was an obvious need for training with respect to canine shootings since the Clayton County officers frequently encounter civilians' dogs." (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Dismiss, at 11–12.) But *Young* does not stand for the proposition that officers must receive specific training on the use of lethal force in every scenario they may face. The Court is not persuaded that a lack of training on the constitutional limitations of using lethal force specifically against dogs constitutes "obvious" deliberate indifference.

Moreover, it appears that Clayton County does have a policy regarding the use of force against animals, further weakening Haynes's argument. Clayton County's Standard Operating Procedures instruct officers that they may "stop an animal that poses an imminent threat to human safety" in accordance with the "Firearms Policy." (Compl. ¶ 69.) The Firearms Policy—which supposedly applies equally to humans—provides that "a firearm shall not be utilized as an impact weapon, except when no other reasonable alternative is readily available." (*Id.* ¶ 70.) That Haynes wishes the policies included instruction on using "catch-pole[s]" or other means of capturing dogs before using lethal force is not enough to avoid dismissal of his § 1983 claim.

8

As the Supreme Court in *Harris* stated, it will not "suffice to prove that an injury . . . could have been avoided if an officer had had better or more training." *See Harris*, 489 U.S. at 391. "Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal." *Id.*

For these reasons, Haynes fails to point to any policy or custom regarding the use of force against dogs that would plausibly constitute deliberate indifference. The Court need not continue the *Monell* inquiry as a result. Clayton County's Motion to Dismiss the § 1983 claim for unlawful seizure under the Fourth Amendment (Count I) is therefore granted.

### B. State Law Claims (Counts II–IV)

The Georgia Constitution extends sovereign immunity to "the state and all of its departments and agencies," including counties. Ga. Const. art. I, § II, ¶ IX(e); *Gilbert v. Richardson*, 264 Ga. 744, 747 (1994) (holding that state sovereign immunity applies the counties). A county maintains its immunity from suit, unless and until a state statute specifically waives that privilege. O.C.G.A. § 36-1-4. It is the plaintiff's burden to establish any such waiver. *Spalding County v. Blanchard*, 275 Ga. App. 448, 449 (2005) (citation omitted). Here, Clayton County argues that sovereign immunity bars Haynes's state law claims against it, as "no legislative enactment in Georgia [ ] waives sovereign immunity under the circumstances alleged in this case." (Br. in Supp. of Def.'s

Mot. to Dismiss, at 14.) Plaintiff Haynes did not respond to these arguments.

The Court agrees with the County that Haynes's state law claims against it are barred by sovereign immunity. Plaintiff Haynes has failed to point to any state statute that would waive sovereign immunity in this case. Therefore, the Court dismisses Haynes's state law claims against the County for negligent training and supervision (Count II), trespass to chattels (Count III), and conversion (Count IV).

### C. Punitive Damages and Attorney's Fees (Count V)

The Court hereby dismisses Count V as to the County. As an initial matter, the County is immune from punitive damages. *Metro. Atlanta Rapid Transit Auth. v. Boswell*, 261 Ga. 427, 428 (1991). Having already dismissed all underlying causes of action against the County, however, the Court must dismiss any requests for punitive damages or attorney's fees against the County.

### IV. Conclusion

For the reasons set forth above, Defendant Clayton County's Motion to Dismiss is GRANTED. All counts alleged against Clayton County (Counts I–V) are hereby dismissed.

SO ORDERED, this ___3rd___ day of December, 2025.

*[signature]*
THOMAS W. THRASH, JR.
United States District Judge